UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELEVEN CITY DINER, LLC, AND EHAVA HOSPITALITY, INC., | ) ) ) |
| Plaintiffs, | ) ) Case No. 1:21-cv-5501 |
| v. | ) ) ) |
| OHIO SECURITY INSURANCE COMPANY, | ) Hon. Steven C. Seeger ) ) Mag. Judge Susan E. Cox |
| Defendant. | ) ) ) |

## AMENDED COMPLAINT

Plaintiffs, Eleven City Diner, LLC and Ehava Hospitality Inc. (collectively, "Eleven City"), by and through their attorneys, Basileios Katris and Julianne M. Dailey, for their amended complaint against Defendant, Ohio Security Insurance Company ("Ohio Security"), state as follows:

### Nature of the Action

1. In late May 2020, following the murder of George Floyd by police officers in Minneapolis, Minnesota, the City of Chicago experienced several days of civil unrest as protestors and rioters flooded its streets. While many protested peacefully in the name of justice, there were those that left a path of destruction – choosing to destroy and loot private businesses. Caught in the crosshairs of this civil unrest was Eleven City Diner, a beloved restaurant in Chicago's South Loop neighborhood. Once a flourishing Chicago institution, and already battling with the COVID-19 pandemic, Eleven City was forced to close its doors to patrons due to the severe property damage it suffered at the hands of looters and property destroyers. Adding insult to injury, Eleven City's long-time insurance provider, Ohio Security, has balked at its responsibility to compensate

Eleven City for its losses resulting from the unrest, choosing to protect its bottom-line in breach of Eleven City's insurance policy and in bad faith. Accordingly, Eleven City must now turn to the court in seeking an award of damages in excess of $500,000.00 plus attorneys' fees, costs, and all other amounts allowed pursuant to 215 ILCS §5/155.

## Parties

2. Eleven City Diner, LLC is a Delaware limited liability company duly authorized to conduct business in Illinois with its principal place of business located in Chicago, Cook County, Illinois.

3. Ehava Hospitality, Inc. is an Illinois corporation with its principal place of business located in Chicago, Cook County, Illinois.

4. Ohio Security is a New Hampshire insurance company not authorized to conduct business in Illinois with its principal place of business located in Keene, Cheshire County, New Hampshire.

## Jurisdiction and Venue

5. Jurisdiction is proper in Illinois pursuant to 735 ILCS 5/2-209 as the events giving rise to this cause of action occurred in Illinois.

6. Venue is proper in Cook County, Illinois pursuant to 735 ILCS 5/2-101 as the insurance policy and related events out of which this litigation arises took place in Cook County, Illinois.

## Background Facts

*The Insurance Policy*

7. On or about April 16, 2019, Eleven City and Ohio Security entered into a Commercial General Liability Policy, BKS (20) 55 13 84 61, for the June 1, 2019 to June 1, 2020

period (the "Policy").  A true and correct copy of the Policy is attached hereto as **Exhibit A**.

8. In relevant part, the policy states:

> **1. Business Income**
> Business Income means the:
> a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> b. Continuing normal operating expenses incurred, including payroll.
>
> \*\*\*
>
> **2. Extra Expense**
> a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
> (2) Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.
>
> \*\*\*
>
> **1. Loss Determination**
> a. The amount of Business Income loss will be determined based on:
>
> (1) The Net Income of the business before the direct physical loss or damage occurred;
> (2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;
> (3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and
> (4) Other relevant sources of information…
>
> b. The amount of Extra Expense will be determined based on:

3

>> (1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred.

\*\*\*

> A.4. Additional Coverages:
>
> **Inventory And Appraisal Expense Coverage**
> We will pay up to $10,000 in any one occurrence for incurred inventory and appraisal costs, and expenses for preparation of loss data, due to loss or damage as a result of a Covered Cause of Loss to covered property. We will only pay if the costs are reasonable and necessary to establish the amount of the loss. Attorney or public adjuster fees are not covered costs under this section.

9. On May 30, 2021, the Policy was in full force and effect.

***The Events Leading to the Claim***

10. As a result of the COVID-19 pandemic, Eleven City was forced to close its doors in mid-March 2020 pursuant to Governor Pritzker's Executive Order dated March 9, 2020.

11. On or about May 28, 2020, it was announced that restaurants in Chicago would be permitted to reopen for outdoor dining beginning on June 3, 2020.

12. Thereafter, on or about June 26, 2020, restaurants in Chicago were permitted to add indoor dining with a capacity limit of 25% or 50 patrons per room, among other social distancing restrictions.

13. Eleven City had opened in a limited capacity in mid-May 2020 and was excited to take advantage of expanding the services it offered its customers as the City of Chicago began loosening its COVID-19 restrictions.

14. Unfortunately, on the evening of May 30, 2020 (the "Date of Loss"), protests and civil unrest erupted throughout Chicagoland in response to the death of George Floyd at the hands of Minneapolis Police.

***The Claim***

15. Because of the looting and destruction it experienced during the civil unrest, on the Date of Loss, Eleven City was forced to close its restaurant due to severe property damage and looting during the civil unrest. This property damage spanned from damage to its manual and rotating doors limiting access to its restaurant to irreplaceable candy jars and countless items in between, including damage and loss of computer equipment and wiring needed to manage the restaurant and take orders. In addition, Eleven City's inventory was either stolen or spoiled due to looters carelessly leaving open refrigerators and freezers.

16. Because the property damage prevented Eleven City from operating, Eleven City incurred losses of Business Income and Extra Expenses, as defined in the Policy, (collectively, "Business Income") in addition to property damage expenses.

17. Eleven City's loss of Business Income and related damages spanned from May 30, 2020 through at least Summer 2020.

***Timeline of Ohio Security's Gamesmanship***

18. Eleven City first notified Ohio Security of its loss of income and other related expenses arising from the government closure (the "Claim") on or about the Date of Loss.

19. On June 2, 2020, in response to Eleven City's Claim, Ohio Security requested an itemized estimate of repairs for the building, photos and videos of the damage, a copy of Eleven City's lease, a police report or case number, and a completed list of lost inventory. *See* Page 5 of Email Correspondence attached hereto as **Exhibit B**.

20. Eleven City provided Ohio Security with the items it requested on June 4, 2020 with the exception of its lease. *See Id*. at 4.

21. Also, on June 4, 2020, Ohio Security assigned Michael Knapp ("Knapp") as claims adjuster to the Claim. *See Id*.

6479283/3/03308.008

22. Later, on June 4, 2020, Knapp requested from Eleven City additional documentation supporting the Claim, including additional photos and videos of the already claimed damage and any other damage, as well as the previously requested copy of Eleven City's lease. *See Id*. at 3-4.

23. On June 6, 2020, Ohio Security requested documentation related to Eleven City's payroll and financials for the Date of Loss and weeks surrounding it, including the time frame of June 2, 2020-July 2, 2020 (the "Disputed Restoration Period"). *See* Page 10-11 of Email Correspondence attached hereto as **Exhibit C**.

24. On June 26, 2020, Ryan Smith ("Smith") of HUB International Insurance Services Inc. ("HUB"), Eleven City's insurance broker, provided Liberty with the information it had requested on June 6, 2020. *See* Ex. B, 3-4.

25. From July 1, 2020 through July 31, 2020, Ohio Security came back to HUB requesting additional and revised financial information relating to the Date of Loss and Disputed Restoration Period. HUB provided all information requested on August 10, 2020 and August 27, 2020. *See Id*. at 1-3. *See also*, Email Correspondence attached hereto as **Exhibits D, E, F, and G**.

26. On August 28, 2020, Ohio Security advised HUB that its own calculations of Eleven City's Claim resulted in a net loss of $0. *See* Page 3-4 of Email Correspondence attached hereto as **Exhibit H**.

27. Between August 28, 2020 and September 9, 2020, Eleven City and HUB attempted to answer any questions Ohio Security and discuss the discrepancies in Ohio Security's calculation of the Claim. *See Id*. at 1-2. *See also*, Pages 6-10 of Email Correspondence attached hereto as **Exhibit I**; Pages 5-10 of Email Correspondence attached hereto as **Exhibit J**.

28. On September 14, 2020, HUB requested that Ohio Security provide it with its

calculation that resulted in a valuation of the Claim of $0.  *See* Ex. J, 3-4.

29. On September 15, 2020, Ohio Security provided HUB with its preliminary calculations of the Business Income loss, which resulted in a net $0 payment from Ohio Security to Eleven City.  Later that day, HUB, Eleven City, and Ohio Security had a telephone call to discuss the Claim.  Following the call, additional documentation of Eleven City's rent expense and management fee expense was provided to Ohio Security.  *See* Ex. J, 1-2.

30. Eleven City supplemented its documentation provided to Ohio Security on September 21, 2020.  *See* Email Correspondence attached hereto as **Exhibit K**.

31. Additional documentation was requested by Ohio Security relating to the Claim on September 29, 2020.  *See* Email Correspondence attached hereto as **Exhibit L**.

32. On October 2, 2020, Ohio Security sent Eleven City its final breakdown which resulted in a total loss calculation in the amount of $35,375.00 and issued to Eleven City payment in the amount of $10,375.00.  *See* Email Correspondence attached hereto as **Exhibit M**.

33. On or about October 13, 2020, HUB, on behalf of Eleven City, enlisted the help of James Kinsel ("Kinsel"), a well-known claim assessor used frequently by Ohio Security insureds to value and settle claims for submission to Ohio Security.  Shortly thereafter, Kinsel was provided with the documentation related to the Claim so that he could assist Eleven City with settling the Claim.

34. It is common practice for Ohio Security to reimburse insureds for the cost of Kinsel's services.

35. Eleven City incurred $5,628.75 in expense fees for the services of Kinsel.  A true and correct copy of the Invoice for Kinsel's services is attached hereto as **Exhibit N**.

36. On January 29, 2021, HUB communicated to Ohio Security a settlement offer based

upon Kinsel's settlement worksheet calculations, which was for an amount that was much less than the full amount owed by Ohio Security to Eleven City and did not include dates outside of the Disputed Restoration Period. This settlement offer was for a total of $64,998.80 for the Claim relating to only the management fee and payroll expenses Eleven City incurred as a result of the shutdown on the Date of Loss. *See* Email Correspondence attached hereto as **Exhibit O**. The reason Eleven City considered such a low settlement offer is because Eleven City needed capital to survive through the pandemic. Along with Eleven City's settlement offer, HUB explained in-depth why the management fees in June 2020 were necessary payments regardless of the amount of income Eleven City earned that month. The management fees were payroll expenses not tied to the amount of income.

37. On February 5, 2021, refusing to reconsider their unreasonable position that the management fees were in fact payroll expenses, Ohio Security advised that they believed their valuation of the Claim was accurate and thereby rejecting the nominal settlement offer as provided by HUB, on behalf of Eleven City. In response, HUB requested a call to discuss. *See Id*. at 4-5.

38. There were no further responses to HUB or Eleven City's inquiries until February 11, 2021, at which point Ohio Security advised it would not reconsider any aspect of its calculation of Eleven City's Business Income loss without new documentation not already provided (if any should exist). *See Id*. at 1-2.

39. On April 22, 2021, Eleven City, through counsel, sent Ohio Security a demand for payment of its Claim (the "April 22nd Letter"). A true and correct copy of the April 22nd Letter is attached hereto as **Exhibit P**. In this letter, Eleven City directed Ohio Security to the case of *Amerigraphics v. Mercury Casualty Company*, 182 Cal. App. 4th 1538 (March 23, 2010), wherein the court found that in the event of a covered loss that forced the complete suspension of an

8

insured's business operations, the policy language was clear that it provided coverage for any lost profits, and, even if there were no lost profits, for at least ongoing expenses incurred during the period of suspension. It was also determined that a "net loss" should be calculated as zero rather than negative dollar amounts. Prior to the letter and after, Ohio Security failed to take this widely respected case law into account to re-calculate the damages owed to Eleven City.

40. Ohio Security responded to the April 22nd Letter on May 3, 2021 (the "May 3rd Response"). In the May 3rd Response, Ohio Security failed to address the legal position contained in the April 22nd Letter, including the *Amerigraphics* case and, instead, simply invited Eleven City to engage in the process of each party engaging an outside appraiser. A true and correct copy of the May 3rd Response is attached hereto as **Exhibit Q.**

41. On June 11, 2021, Eleven City, again through counsel, replied to the May 3rd Response, renewing its demand contained in the April 22nd Letter (the "June 11th Demand"). A true and correct copy of the June 11th Demand is attached hereto as **Exhibit R**.

42. Ohio Security never responded to the June 11th Demand.

43. Ohio Security's chosen Disputed Restoration Period fails to consider the weeks thereafter during which Eleven City lost significant Business Income all arising from the looting on the Date of Loss.

44. Ohio Security's calculation of Business Income under the terms of the Policy is unreasonably low as it calculates Business Income based upon July 2020, a month during which Eleven City continued to suffer Business Income loss under the terms of the Policy, and it inappropriately manipulates Eleven City's income, payroll, and expenses in order to create an artificially low calculation for Business Income.

45. To date, Ohio Security has failed and refused to perform its obligations contained

in the Policy by compensating Eleven City for its Business Losses, Extra Expenses, and other covered expenses set forth in the Claim in accordance with the terms of the Policy.

46. Eleven City has fully performed its obligations contained in the Policy.

47. To date, Eleven City has incurred damages in excess of $500,000.00 plus attorneys' fees and costs.

## COUNT I – BREACH OF CONTRACT

48. Plaintiff hereby incorporates Par. 1-47 as if fully restated herein.

49. The Policy is a valid and enforceable contract entered into by and between Eleven City and Ohio Security.

50. Eleven City has fully performed his obligations pursuant to the terms of the Policy.

51. To date, Ohio Security has breached the terms of the Policy by failing and refusing to pay Eleven City the value of the Claim.

52. To date, as a result of Ohio Security's actions, Eleven City has incurred damages in excess of $500,000.00.

WHEREFORE, Plaintiffs, Eleven City Diner, LLC and Ehava Hospitality Inc., pray this Court grant judgment in their favor and against Defendant, Ohio Security Insurance Company d/b/a Ohio Security Insurance, for monetary damages in an amount to be proven at trial and all other relief this Court deems equitable and just.

## COUNT II – BAD FAITH

53. Plaintiff hereby incorporates Par. 1-52 as if fully restated herein.

54. Ohio Security acted vexatiously, unreasonably, and in bad faith by failing to promptly respond to Eleven City and HUB's communications concerning the Claim.

55. Ohio Security acted vexatiously, unreasonably, and in bad faith in calculating the

value of the Claim to be a net loss of $0 by, among other things, utilizing a month during which Eleven City's Business Income loss was still occurring, refusing to include management fees and certain other payroll expenses paid by Eleven City on the Date of Loss and/or during the Disputed Restoration Period.

56. Ohio Security acted vexatiously, unreasonably, and in bad faith because it did not have substantial grounds to deny the amount of the Claim and has further refused to articulate a legal basis for doing so after over a year since the loss began.

57. Ohio Security further acted vexatiously, unreasonably, and in bad faith when it denied Eleven City payment of the reasonable invoice for Kinsel's services in spite of its common past practice of compensating insureds for Kinsel's services.

58. Ohio Security's conduct has severely prejudiced Eleven City by, among other things, forcing Eleven City to retain legal counsel and seek legal relief through this litigation.

WHEREFORE, Plaintiffs, Eleven City Diner, LLC and Ehava Hospitality Inc., pray this Court grant judgment in their favor and against Defendant, Ohio Security Insurance Company d/b/a Ohio Security Insurance, for the following relief:

A. Monetary damages in an amount to be proven at trial;

B. Attorneys' fees and costs pursuant to

C. An additional amount not to exceed 60% of the judgment in favor of Plaintiff in this action pursuant to 215 ILCS §5/155;

D. "Other costs" pursuant to 215 ILCS §5/155; and

E. Any additional amounts this Court deems equitable and just.

Dated: September 21, 2022     Respectfully submitted,

**ELEVEN CITY DINER, LLC AND EHAVA HOSPITALITY, INC.,**

*Plaintiffs*

By: /s/ Basileios Katris
One of their Attorneys

Basileios Katris (bkatris@hmblaw.com)
Julianne M. Dailey (jdailey@hmblaw.com)
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200

## **CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that he caused a true and correct copy of the foregoing, **PLAINTIFFS' AMENDED COMPLAINT** to be filed electronically on this 21st day of September, 2022. Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF electronic filing system.

By: /s/ *Basileios Katris*